# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (Southern Division)

| | |
|---|---|
| JOHN AND KIMBERLY BEAHN, individually and as parents and next friends of P.B., M.B., AND B.B., MINORS, and on behalf of all others similarly situated<br>8612 White Post Court<br>Potomac, Maryland 20854 | |
| and | Case No.: 8:20-cv-02239-GJH |
| CLARA I. OBERMEIER, individually and as parent and next friend of A.L. and J.W., MINORS, and on behalf of all others similarly situated<br>8305 Still Spring Court<br>Bethesda, Maryland 20817 | |
| and | |
| MIRIAM ROTH, individually and as parent and next friend of Z.R. AND I.R., MINORS, and on behalf of all others similarly situated<br>716 Kersey Road<br>Silver Spring, Maryland 20902 | |
| and | |
| JAMES AND GEM LAWSON, individually and as parent and next friend of G.L., A MINOR, and on behalf of all others similarly situated<br>7512 Oyster Bay Way<br>Gaithersburg, Maryland 20886 | |
| and | |
| JOSHUA AND PENNY BORTNICK, individually and as parents and next friends of J.B., A MINOR, and on behalf of all others similarly situated<br>203 Casey Lane<br>Rockville, Maryland 20850 | |

and

CHRISTOPHER AND MEAGAN RIZZO, individually and
as parents and next friends of A.R., A MINOR, and on
behalf of all others similarly situated
8608 Timber Hill Lane
Potomac, Maryland 20854
and

BROOKEWOOD SCHOOL, INC.,
Individually and on behalf of all others similarly situated
10401 Armory Avenue
Kensington, Maryland 20895

and

AVALON SCHOOL, INC.,
Individually and on behalf of all others similarly situated
11811 Claridge Road
Silver Spring, Maryland 20902
                                    PLAINTIFFS,

v.

TRAVIS A. GAYLES
Montgomery County Department of
Health and Human Services
1301 Piccard Drive
Rockville, Maryland 20850

and

MARC ELRICH
County Executive of Montgomery County
101 Monroe Street, 2nd Floor
Rockville, Maryland 20850

and

MONTGOMERY COUNTY, MARYLAND

<u>Serve on</u>:
Marc Elrich
County Executive
101 Monroe Street, 2nd Floor
Rockville, Maryland 20850

                    DEFENDANTS.

**AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

COMES NOW, Plaintiffs John and Kimberly Beahn, individually and as parents and next friends of their minor children P.B., M.B., and B.B., Clara I. Obermeier, individually and as parent and next friend of her minor children A.L. and J.W., Miriam Roth, individually and as parent and next friend of their her minor children Z.R. and I.R., James and Gem Lawson, individually and as parents and next friends of their minor child G.L., Joshua and Penny Bortnick, individually and as parents and next friends of their minor child J.B., Christopher and Meagan Rizzo, individually and as parents and next friends of their minor child A.R., Brookewood School, Inc., and Avalon School, Inc.by and through undersigned counsel, file this Amended Class Action Complaint and sue Defendants Travis A. Gayles, County Executive Marc Elrich, and Montgomery County, Maryland and adopt, incorporate, and re-allege the allegations in all prior complaints, and request that this Court issue a Declaratory Judgment and Temporary, Preliminary, and Permanent Injunctive Relief in Plaintiffs' favor, and in support thereof states as follows:

**INTRODUCTION**

On the evening of Friday, July 31, 2020, at around 7:58 p.m.,, without warning or consultation, the Montgomery County Health Officer, Travis Gayles, unilaterally announced that all religious and other private schools in Montgomery County are "prohibited from physically re-opening for in-person instruction through October 1, 2020." The order is the only one of its kind in the State of Maryland or in the country. It applies only to religious and other private schools in Montgomery County. The public schools across the State, including in Montgomery County, continue to have discretion as to when to open and close.

The Health Officer's order purported to be acting on the authority of the Maryland Department of Health, but the Health Officer has been given no such authority. Under the State's emergency laws, authority to take executive action in the pandemic is vested exclusively in the governor. On Saturday, August 1, within 18 hours of the Health Officer's decree, Governor Hogan flatly denounced this unlawful incursion into his authority:

> I strongly disagree with Montgomery County's decision to mandate the closure of private and parochial schools. As long as these schools develop safe plans that follow State and CDC guidelines, they should be empowered to do what's best for their community. This is a decision for schools and parents, not politicians.

To emphasize the point, on Monday, August 3, the Governor issued an emergency executive order making it clear that the County Health Officer cannot act upon gubernatorial emergency authority in his closure order. *See* Executive Order 20-08-03-01. The Governor's emergency order specifically states that a "political subdivision" may issue more restrictive closing orders than what is contained in his executive order, but that they may not do so as to schools. In issuing the order, the Governor made it clear that "private and parochial schools deserve the same opportunity and flexibility to make reopening decisions based on public health guidelines. The blanket closure mandate imposed by Montgomery County was overly broad and inconsistent with the powers intended to be delegated to the county health officer."

4

On Wednesday, August 5, the Health Officer and County Executive Marc Elrich spoke to the press and stated that the July 31 had not been rescinded that they were evaluating the impact of the Governor's August 3 emergency order on the Health Officer's directive. Just hours later, Montgomery County announced that the July 31 order was rescinded and that the Health Office had issued a new order. The new order is nearly identical to the July 31 order, and still states that "[n]onpublic schools located within Montgomery County, Maryland are prohibited from reopening for in-person instruction through October 1, 2020." The order took effect immediately.

The Health Officer seemingly recognized that he did not have any authority pursuant to the Governor's executive order to prohibit in-person school openings. He cited to COMAR 10.06.01.06 and § 18-208 of the Health General Article of the Maryland Annotated Code as purportedly giving him authority to issue a blanket order closing all religious and private schools in the County. However, neither provision gives him such authority. The Health General Article requires that local health officers "cooperate with the Secretary [of Health] to prevent the spread of disease." Md. Code Ann., HG § 18-208. While the COMAR provision he relies on allows the Secretary of Health or health officer to order a business or facility to close if it is suspected to be a threat to public health after making an individualized determination about the business or facility, it does not give the Health Officer authority to issue a blanket order closing all schools.

The Health Officer issued his directives despite the fact that religious and other private schools have spent thousands of hours and millions of dollars retrofitting their schools and preparing for a safe reopening, strictly complying with the guidelines and best practices from the Maryland Department of Health, the Centers for Disease for Control and Prevention, and leading public health and educational experts. These efforts and expenditures have been focused on ensuring the safety of students, faculty and staff at each of the schools, which is of paramount

concern to each of the schools.  The Health Officer made no effort to understand or evaluate these extraordinary preparations to insure a safe reopening.

Significantly, the Health Officer's August 5 order applies only to religious and other private schools.  The Montgomery County Public School system was given complete autonomy and discretion to decide when and how to reopen.  While the public school system has chosen remote learning for now, it may reopen anytime it chooses.  The Health Officer has usurped the authority of religious and other private school leaders to make their own decisions as to when and how to reopen.

The Health Officer's order appears to be the only one of its kind in the country at this time.  Meanwhile, religious and other private schools throughout the rest of Maryland, the District of Columbia, and Virginia are preparing for safe reopenings in the coming weeks, after months of careful planning and significant expenditures.

Nonpublic schools in Montgomery County enroll approximately 5,650 students in their nursery school programs (ages 2, 3, and 4).  These programs, an important lifeline for working parents, will be shut down on the Montgomery County Health Department order.  In contrast, the County's 1,300 licensed day care programs will remain open.

The order is also not directed at postsecondary schools which are reopening this month in Montgomery County, including the University of Maryland at Shady Grove, Montgomery College, and Washington Adventist University.

The Health Officer's order was not in response to any particular COVID-19 issue at religious or other private schools, many of which have been open safely for summer programs.  There has been no outbreak or particular public health emergency focused on nonpublic schools in Montgomery County to prompt this order.  Instead, it appears to be a political response, an

answer to complaints by some public school parents about "why their schools are closed and private schools are not."

Public schools are closed because their **leaders** made a decision which they believed was in their best judgment, exercising the discretion afforded to them under law. Public schools have the right to make this decision.  The Montgomery County public school system has 162,680 students and 23,347 teachers and staff, most of whom are covered by extensive collective bargaining agreements.  Clearly, the County public school system faces many different and more complex considerations than small, private schools.

The Health Officer's August 5 order is illegal because:

1) it exceeds his authority under State and County law and the governor's executive orders;

2) it is not rationally related to public health, especially when restaurants, bars, day care centers, 4-year and community colleges, camps, classes in the parks, and other similar facilities are permitted to remain open;

3.) it is overbroad, and not narrowly tailored to any particular school  facility, but instead was extended only to one category of schools, those that were "nonpublic" (religious or private) in character; and

4.) it unlawfully discriminates against religious and private schools.

Plaintiffs request that the Court declare that the Health Officer had no authority to issue an order prohibiting religious and private schools from reopening for in-person education. Plaintiffs request temporary, preliminary, and permanent injunctive relief to enjoin Defendants from closing religious and private schools to in-person learning and enjoining the enforcement of any order that closes in-person instruction at religious and private schools. Plaintiffs seek

compensatory damages against Defendants arising out of the Health Officer's unlawful order and the enforcement of the order.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this Complaint states federal causes of action.

2.      Pursuant to 28 U.S.C. § 1391(b), venue in this Court is proper.

## PARTIES

3.      Plaintiffs John Beahn and Kim Beahn are adult residents and taxpayers of the State of Maryland, residing therein at 8612 White Post Court, Potomac, Maryland 20854. They sue in their individual capacities and parents and next friends of their three minor children, P.B., M.B., and B.B., who are residents of the State of Maryland and Montgomery County. They also bring this suit in a class representative capacity on behalf of those similarly situated.

4.      Plaintiff Clara I. Obermeier is an adult resident and taxpayer of the State of Maryland, residing therein at 8305 Still Spring Court, Bethesda, Maryland 20817. Ms. Obermeier sues in her individual capacity and as parent and next friend of her two minor children, J.W. and A.L., who are residents of the State of Maryland and Montgomery County. She also brings this suit in a class representative capacity on behalf of those similarly situated.

5.      Plaintiff Miriam Roth is an adult resident and taxpayer of the State of Maryland, residing therein at 716 Kersey Road, Silver Spring, Maryland 20902. She sues in her individual capacity and as parent and next friend of her minor children, Z.R. and I.R., who are residents of the State of Maryland and Montgomery County. She also brings this suit in a class representative capacity on behalf of those similarly situated.

6.      Plaintiffs James and Gem Lawson are adult residents and taxpayers of the State of Maryland, residing therein at 7512 Oyster Bay Way, Gaithersburg, Maryland 20886. They sue in

8

their individual capacities and as parents and next friends of their minor child, G.L., who is a resident of the State of Maryland and Montgomery County. They also bring this suit in a class representative capacity on behalf of those similarly situated.

7.     Plaintiffs Joshua and Penny Bortnick are adult residents and taxpayers of the State of Maryland, residing therein at 203 Casey Lane, Rockville, Maryland 20850. They sue in their individual capacities and as parents and next friends of their minor child, J.B., who is a resident of the State of Maryland and Montgomery County. They also bring this suit in a class representative capacity on behalf of those similarly situated.

8.     Plaintiffs Christopher and Meagan Rizzo are adult residents and taxpayers of the State of Maryland, residing therein at 8608 Timber Hill Lane, Potomac, Maryland 20854. They sue in their individual capacities and as parents and next friends of their minor child, A.R., who is a resident of the State of Maryland and Montgomery County. They also bring this suit in a class representative capacity on behalf of those similarly situated.

9.     Plaintiff Avalon School, Inc. is a corporation in good standing in the State of Maryland and operates the Avalon School, located at 11811 Claridge Road, Silver Spring, Maryland 20902. The Avalon School is an independent, Catholic school for boys in grades K-12.

10.     Plaintiff Brookewood School, Inc. is a corporation in good standing in the State of Maryland and operates the Brookewood School, located at 10401 Armory Avenue, Kensington, Maryland 20895. The Brookewood School is an independent, Catholic school for girls in grades 1-12.

11.     Defendant Montgomery County, Maryland ("County") is a chartered home-rule county exercising all governmental functions granted by its Charter, by the Maryland Constitution, and by Article 25A of the Annotated Code of Maryland.

12.      Defendant Marc Elrich is an adult citizen of the State of Maryland. Elrich is the County Executive for Montgomery County. He was elected as County Executive on November 6, 2018. Plaintiffs sue Elrich in his individual and official capacity and as an agent of Defendant Montgomery County.

13.      Defendant Travis A. Gayles is an adult citizen of the State of Maryland. Gayles is the Health Officer for Montgomery County, Maryland. Plaintiffs sue Gayles in his individual and official capacity. Gayles is an employee of the State of Maryland who is jointly appointed by the Secretary of Health and Montgomery County. Gayle also serves a division director of the Public Health Services division of the County's Department of Health and Human Services and reports to Elrich and the State.

## FACTS COMMON TO ALL COUNTS

### *Health Officer's July 31 Directive and Order prohibiting religious and private schools from physically reopening*

14.      In Montgomery County, there are 22,312 students enrolled in nonpublic schools, including K-12 and nursery schools. Of those students enrolled in nonpublic schools, there are 9,345 students, or 40 percent, that are enrolled in religious schools.

15.      There are more than 180 private schools in Montgomery County. Of these schools, approximately 40 percent are religious schools.

16.      On Friday, July 31, 2020, at 7:58 p.m., after the close of business, the Montgomery County Health Officer, Travis Gayles, unilaterally issued a directive and order titled, "COUNTY HEALTH OFFICER DIRECTIVE AND ORDER REGARDING PRIVATE AND INDEPENDENT SCHOOLS." The directive and order stated that "[n]onpublic schools located within Montgomery County, Maryland are prohibited from physically reopening for in-person instruction through October 1, 2020." A copy of the order is attached as Exhibit 1.

17.     The order defined "nonpublic school" as any school located in Montgomery County that is not a public school, including, but not limited to, "all private pay schools, schools affiliated with religious institutions, or schools that are otherwise considered to be independent schools."

18.     The order took effect on Monday, August 3, 2020 at 6 a.m. and was to remain in effect through October 1, 2020 "or until rescinded, suspended, amended, or revised by additional orders."

19.     The order stated that "[a] person who knowingly and willfully violates this Order or any Local Order is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding one year or a fine not exceeding $5,000 or both."

20.     Just two days prior to the directive, on Wednesday, July 29, the Health Officer held a conference call with leaders of private and religious schools, but made no mention of any mandatory requirements for virtual learning.

21.     The County Health Officer's summary order raised more questions than it answered.  For instance: 1.) Since county day care programs are operating, can early childhood programs and kindergarten take place, especially since those programs are not truly susceptible to remote learning?; 2.) Do religious and private schools have the ability to offer small, in-person, physically distanced groups for social, emotional, athletic or other programming, either indoors or outdoors?; 3) What efforts were undertaken to analyze the safety and preventative measures implemented by individual schools?; and, importantly, 4.) What criteria will be used to determine when schools will be safe for students and faculty to return to campus?

22.     In his rush to issue the Friday night order, the County Health Officer did not consider any of these important issues. The last, reopening criteria, is particularly important.  In

his webinar on Wednesday, July 29 with leaders of religious and private schools, the County

Health Officer refused to articulate any criteria, either for closing or reopening, other than stating

that the County should be striving to get to cases in the single digits or teens per day.

23.     The Health Officer stated that he believes it is safe to reopen schools when the

number of new daily cases is between 8 and 20 in Montgomery County. He has no explanation

for where that number comes from.

### *The Montgomery County Health Officer had no authority pursuant to any gubernatorial executive order to issue the July 31 directive and order*

24.     On March 5, 2020, Governor Hogan issued a proclamation declaring a state of

emergency under his authority under Md. Code Ann., Pub. Safety § 14-303. He issued a

gubernatorial proclamation making a Declaration of State of Emergency and Existence of

Catastrophic Health Emergency under his authority under PS § 14-3A-02.

25.     Section 14-303 of the Public Safety Article authorizes the governor to proclaim a

state of emergency and to promulgate "reasonable orders, rules and regulations" to "protect life

and property or calculated effectively to terminate or control the public emergency." PS § 14-

3A-02 authorizes the governor issue a catastrophic health emergency proclamation, which he

may extend for successive 30 day periods.  Section 14-3A-03(d)(2) authorizes the governor, "If

necessary and reasonable to save lives or prevent exposure to a deadly agent, the Governor may

order individuals to remain indoors or refrain from congregating."

26.     The Governor has now issued multiple executive orders, many of which clarify,

expand or narrow prior executive orders. *See* Order issued March 12, 2020,  "Prohibiting Large

Gatherings and Events and Closing Senior Centers," as amended and restated on March 16,

2020, and further amended and restated on March 19, 2020 by Order Number 20-03-19-01, and

further amended and restated on March 23, 2020 by Order Number 20-03-29-01, and further

amended and restated on March 30, 2020 by Order Number 20-03-30-01, and further amended and restated on May 6, 2020 by Order Number 20-05-06-01, and further amended and restated on May 13, 2020 by Order Number 20-05-13-01, and further amended and restated on May 27, 2020 by Order Number 20-05-27-01, further amended and restated on June 3, 2020 by Order Number 20-06-03-01, and further amended and restated on June 10, 2020 by Order Number 20-06-10-01, is further amended and restated in its entirety as set forth herein.

27.     Since the outbreak of the pandemic, no gubernatorial order has referenced schools, public or private, until the Governor's August 1 emergency order which stated that "political subdivisions" could not close schools.  Of the 77 orders, proclamations, and guidance statements issued by Governor Hogan since the outbreak of the pandemic, only the August 1 emergency order mentioned either public or nonpublic schools. The only other reference to schools is "self-defense schools" which have been permitted to operate in Montgomery County and throughout the State. Instead, consistent with Maryland's historic and statutory framework, Governor Hogan has consistently worked in collaboration with the State Superintendent to provide direction and guidance to the education community, without issuing executive orders of his own directed to either public or private schools.

28.     The Health Officer claimed that his July 31 directive and order was pursuant to State Executive Order 20-07-29-01. Contrary to the County Health Officer's assertion, the Governor's July 29, 2020 executive order does not delegate to him, the authority to close-in person learning in religious and public schools.

29.     State Executive Order 20-07-29-01 was issued by Governor Hogan just two days prior, on July 29, 2020. That executive order said nothing about the closing or reopening of schools.

30.     There is no indication that Governor Hogan intended the language in that executive order to permit the County Health Officer to close schools.  The order explicitly applies to "businesses, organizations, establishments, or facilities." (Ex. 2, Executive Order 20-07-29-01).  It does not reference schools, and in fact, is directly contrary to the consistent and explicit guidance from the State Superintendent of Education.

31.     In fact on July 22, 2020, Governor Hogan appeared with State Superintendent Salmon at a press conference to discuss school reopening.  At the press conference with the Governor,  and in subsequent written statements, the Superintendent reaffirmed the importance of the "Maryland Recovery Plan for Education, which follows the State's overall recovery plan and the governor's executive orders."   That plan continues to make clear that the decision to open or close a nonpublic schools rests exclusively with them.

32.     The Health Officer claimed in his July 31 order that he was acting as a "designee for Robert R. Neall, Secretary of Health for the State of Maryland." But the Health Officer had no authority to issue an order prohibiting religious or other private schools from reopening for in-person learning.

33.     In May 2020, R.J. Hawley, the Executive Director of Plaintiff Avalon School, a Catholic, K-12 school in Montgomery County, and the Plaintiff Brookewood School, a Catholic school for grades 1-12 in Montgomery County, contacted the Montgomery County Department of Health and Human Services regarding his schools' plans for reopening in September. In response, Kenny Welch of the Montgomery County Department of Health and Human Services responded:

> Thank you for contacting the Montgomery County Department of Health and
> Human Services regarding guidance for private schools.  At this point,
> Montgomery County does not exactly know if local government will play a role if
> schools will be able to operate.  It will depend on if the Governor and the

14

Maryland Department of Education give power to the local authorities and what the status is regarding case load and potential surge of the virus moving into the fall.

Until we know more, we are advising all facilities, plan to open as normal with modifications and policies in accordance with the CDC guidance.

34.     The responding environmental health manager provided a link to the CDC school reopening guidelines in his email.

35.     Plaintiff Avalon School and other religious and private schools did just as stated in the Department of Health and Human Services' email, relying upon CDC guidelines and the published guidance form the State Department of Education in making large scale investments into a safe reopening.

36.     The Montgomery County Department of Health and Human Services recognized that it did not have any authority as it relates to the operation of schools, unless vested with such authority from the Governor or the Maryland Department of Education. No such authority has been given to the department by the Governor or Maryland Department of Education.

37.     Montgomery County is a home rule county under Md. Const. Art. XI-A since its charter was adopted on November 2, 1948, and its government does not have authority to regulate public or private schools.

38.     The General Assembly has the exclusive authority to regulate public and private schools and has designated that authority to the Maryland State Board of Education. The Maryland State Department of Education has a Nonpublic School Approval Branch that is responsible for regulatory oversight of nonpublic schools in Maryland.

39.     The Montgomery County public school system is considered an instrumentality of the State. It is governed by a superintendent and an elected board of education but it is a creature

of the General Assembly and ultimately subject to the visitorial power of the State Board of Education, which acts through the State Superintendent of Schools.

40.     County health officers act at the discretion of the Secretary of Health to enforce the State health laws and policies, rules, and regulations, adopted by the Secretary of Health. *See* Md. Code Ann., HG § 3-306(c)(4)(i)(1). County health officers also enforce "rules and regulations" of the County health boards.

41.     Montgomery County's County Council sits as the Board of Health. *See* Montgomery County Code, § 24-1. The Board of Health is authorized "to adopt and enforce all needful rules and regulations concerning sanitation for eating and drinking establishments, habitable buildings and private water supplies, within their jurisdiction." *Id.*

42.     In the July 31 order, he Montgomery County Health Officer did not purport to exercise any home rule powers of the Montgomery County government or any particular statutory authority. He did not cite to any authority other than stating that he was acting "as the designee for Robert R. Neall, Secretary of Health" for the State of Maryland.

43.     The County Health Officer presumably relied upon the language in State Executive Order 20-07-29-01, which provides that:

> If a political subdivision determines that doing so is necessary and reasonable to save lives or prevent exposure to Covid-19, the political subdivision is hereby authorized to issue orders that are more restrictive than this Order ("Local Orders"):
>
> > i.   requiring any businesses, organizations, establishments, or facilities to close and/or modify their operations; and
> >
> > ii.  requiring individuals to remain indoors or to refrain from congregating.

44.     As a threshold matter, the authority is delegated to the "political subdivision" and not to the County Health Officer. It has long been established that legislative grant of public

16

health police powers to a "political subdivision" invests sovereign authority in the "governing body."  The "governing body" in a chartered county is "the county executive and county council acting together."

45.     Despite the title of "County Health Officer," Defendant Gayles cannot simply act as the "political subdivision" without more than the Governor's executive order, any more than the fire chief or the police chief could. There is nothing in State or County law or the Governor's executive order which gives the County Health Officer the authority to simply exercise this important grant of emergency authority to the political subdivision. The "political subdivision" has made no such predicate determination that closing religious and private schools "is necessary and reasonable to save lives or prevent exposure to Covid-19." The County Health Officer cannot simply choose to act by himself on behalf of the "political subdivision."

### The Governor's August 1 emergency order

46.     On Monday, August 3, Governor Hogan made the intent of his executive orders clear.  He issued Executive Order 20-08-03-01, which excludes "schools" from the authority delegated to political subdivisions to issue more restrictive closing orders.  In issuing the Order, the Governor made his intent clear:

> The recovery plan for Maryland public schools stresses local flexibility within the parameters set by state officials. Over the last several weeks, school boards and superintendents made their own decisions about how and when to reopen public schools, after consultation with state and local health officials.

> Private and parochial schools deserve the same opportunity and flexibility to make reopening decisions based on public health guidelines. The blanket closure mandate imposed by Montgomery County was overly broad and inconsistent with the powers intended to be delegated to the county health officer.

> To be clear, Maryland's recovery continues to be based on a flexible, community-based approach that follows science, not politics. As long as schools develop safe and detailed plans that follow CDC and state guidelines, they should be empowered to do what's best for their community.

17

I want to thank all the parents, students, and school administrators who have spoken out in recent days about this important issue.

### *The Health Officer's August 5 order*

47.     On the afternoon of August 5, the Health Officer and County Executive Marc Elrich answered questions from the press. They were repeatedly asked about whether the Health Officer's July 31 order was rescinded in light of the Governor's Executive Order 20-08-03-01. The Health Officer Stated, "As it currently stands, it has not been rescinded." He also stated that he was "continuing to evaluate the impact of the Governor's executive order on the directive that we put out." He gave no indication that a new order was forthcoming.

48.     Just hours later, the County announced that the Health Officer had rescinded his July 31 order and replaced it with a new order that took effect immediately. The new order is similar in substance to his previous order and still states that "[n]onpublic schools located within Montgomery County, Maryland are prohibited from reopening for in-person instruction through October 1, 2020." The new order "explicitly excludes programs licensed or regulated by the Maryland Office of Childcare" from the definition of nonpublic schools.

49.     The Health Officer seemed to recognize he did not have authority pursuant to the Governor's executive order, as he backpedaled from citing to State Executive Order 20-07-29-01. Instead, his August 5 order cited to COMAR 10.06.01.06 and § 18-208 of the Health General Article of the Maryland Annotated Code as purportedly giving him authority to issue a blanket order closing all religious and private schools in the County.

50.     In the five days leading up to the Health Officer's August 5 order, new cases of COVID-19 in Montgomery County fell. There were 66 cases reported on August 5, and dropped to 56 new cases the following day.

### *The Secretary of Health's Memorandum to all health officials*

51.     On the morning of August 6, the day after the Health Officer's new order,

Maryland Secretary of Health Robert R. Neall issued a memorandum to all local health officers

in the State with the subject line "Blanket Closure of Non-Public Schools in Local Jurisdictions."

52.     The memorandum stated that "it is the health policy of the State of Maryland that

non-public schools not be closed in a blanket manner." Rather, local health officers are to

"carefully evaluate the facts and circumstances of each individual school and their proposed

COVID-19 response plan." The memorandum continued:

> The State of Maryland's position is that all schools, including public school
> systems and non-public schools, be provided with the individualized opportunity
> to determine how they are able to comply with the federal and state COVID-19
> guidance to reopen safely and protect students and staff. Those determinations
> should be made in close consultation with the affected schools and local health
> departments with Maryland Department of Health guidance.
>
> It is important that an individualized analysis be conducted so that each non-
> public school has the same opportunity that public schools have to make
> reopening decisions based on the U.S. Centers for Disease Control and Prevention
> (CDC) recommendations, and that are consistent with the Maryland State
> Department of Education's (MSDE) Reopening Plan.

53.     In addition to emphasizing the State's position that religious and private schools

give given the individualized opportunity to decide how to reopen safely, the Secretary of Health

cited childcare and summer camps as examples "of where reasonable precautions, in line with

CDC guidance and common-sense steps by Marylanders, have resulted in balance between

minimizing the risks posed by COVID-19 and providing children with necessary educational

opportunities. The Secretary of Health further stated that "[t]he experience over the summer has

shown that a careful approach of individualized facility planning has yielded success in

minimizing outbreaks."

***The State Department of Education's Recovery Plan and***
***Montgomery County Public Schools decision to close schools in the fall***

54.     On March 16, 2020, the Montgomery County Public Schools Superintendent Dr. Jack R. Smith suspended in-person classes.

55.     On May 6, 2020, Governor Hogan and the State Superintendent of Schools, Dr. Karen Salmon, closed all public schools for in-person learning in Maryland for the remainder of the 2019-20 school year. They announced that they would work on planning to reopen schools in the fall.

56.     The Maryland State Department of Education sent memos to private pay nonpublic schools and registered church-exempt schools on March 19, 2020 recommending that they close. The memos stated that these schools are "governed and operated by private organizations" and "[t]he Legal Authority of each nonpublic school is responsible for making the determination regarding its school closure as a result of COVID-19." (Ex. 3, State Plan, at 30).

57.     The Maryland State Department of Education sent a memo to publicly funded nonpublic schools March 17, 2020, stating that the schools were required to be closed through April 15, 2020 and for any subsequent required extensions.

58.     In June 2020, the State Superintendent issued "Maryland's Recovery Plan for Education," a comprehensive, 70-page plan to guide schools in making safe reopening decisions for the fall. (Ex. 3, State Recovery Plan). The Recovery Plan cites CDC and other expert sources extensively and details extensive options and best practices for school administrators to consider when reopening. A similar version of the recovery plan had also been released in May and July 2020.

59.     The State Department of Education stated in the Recovery Plan that "[d]uring the recovery phase from this pandemic, decisions regarding the operating status of each nonpublic

school (for both nonpublic schools approved under COMAR 13A.09.09 and registered church-exempt schools) will continue to be made by the school's Legal Authority." (*Id.*).

60.     The Recovery Plan further stated that if a local school system decides to open schools in a gradual fashion, 'the Legal Authority of each nonpublic school approved under COMAR 13A.09.10 may choose to either gradually open in accordance with a local school system or open to all students, as each school deems appropriate. (*Id.*).

61.     On July 15, 2020, the State Superintendent's office reaffirmed that the decision to open and close nonpublic schools rested with the schools themselves, and not public authorities:

> A memo from the State Superintendent of Schools, Dr. Karen B. Salmon, to registered church-exempt schools, dated March 19, 2020, stated that these schools are 'governed and operated by private organizations. The Legal Authority of each nonpublic school is responsible for making the determination regarding its school closure as a result of COVID-19.' . . . During the recovery phase from this pandemic, decisions regarding the operating status of each nonpublic school (for registered church-exempt schools) will continue to be made by the school's Legal Authority.
>
> During the recovery phase from this pandemic, decisions regarding the operating status of each nonpublic school (approved under COMAR 13A.09.09) will continue to be made by the school's Legal Authority.
>
> The success and health of all students is of paramount importance to the State Superintendent of Schools, and she truly appreciates that you have reached out to her. If  you have any additional questions, please do not hesitate to contact me at alexandra.cambra@maryland.gov or (410) 767-0407.

62.     Public schools in Montgomery County—and throughout all of Maryland—are permitted to determine whether, when, and how to reopen for in-person instruction.

63.     On July 22, 2020, Dr. Salmon announced that local school districts in the State will have the authority to decide whether instruction this fall will be virtual, in-person, or some combination if the schools complied with CDC guidelines and State orders. She stated that local school systems "will have the flexibility to determine, in consultation with their local health

officers, how they open, and which groups of students and staff will be able to re-enter

buildings." (Ex. 4, Salmon Remarks).

66. 64. Public schools that choose to reopen would be required to mandate that staff and

students wear face coverings, have procedures in place if staff members or students develop

COVID-19, and stress the importance of handwashing and physical distancing.

65. This summer, public and non-public schools were permitted to determine whether

to have in-person summer school. Dr. Salmon stated on July 22 that "[c]ontinuing in Stage 2 of

Recovery, just as schools could begin limited in-person summer instruction, schools can choose

to reopen for in-person instruction in the fall." (Ex. 4, Salmon Remarks).

66. She requested that each public school system in Maryland submit their reopening

plans by August 14, 2020. Dr. Salmon stated, "We want to get our students back to school as

soon as possible for in-person instruction, and this should be the driving goal and the basis for all

of our decisions. Public health experts, including the American Academy of Pediatrics, agree."

(Ex. 4, Salmon Remarks).

67. Dr. Salmon emphasized the importance of CDC guidelines and adherence to state

health protocols.  (*Id.*).

68. On July 14, 2020, the Montgomery County Public Schools superintendent, Jack

Smith, Ph.D. issued a detailed 21-page for reopening in-person education in Montgomery

County.

> The 2020-2021 school year will begin on Monday, August 31, 2020, for all students.
> Students will return to schools on a rotational schedule for in-person learning with
> reduced class sizes and reduced numbers of students in the buildings. Due to limited
> capacity, transportation resources will be prioritized to elementary and middle school
> students. The goal is for all grade levels to be in a school rotation by end of
> November. Students will return to classrooms by grade level, last   name/address, and
> cluster in phases over the first months of the school year.

69.     Dr. Smith said the draft plan was based on "guidance we have received from the Maryland State Department of Education and from our county health partners," which is how he has referred to the County Health Officer. The 21-page plan summarized strategies for safe in-person reopening, including bus transportation, use of marks, and allowing parents to select other learning modes, including remote learning for their children.  The plan had been developed after conducting a major parent survey in June which favored in-person education, and after substantial engagement with all stakeholders in the previous month.  While Dr. Smith emphasized that the plan was in draft form, he also said it was the product of many months of careful planning. The draft plan was clearly intended for submission to the State Superintendent.

70.     Two days later, on Thursday evening, July 16, 2020, the Montgomery County teachers union, the Montgomery County Education Association, held a closed door town hall for union members.  School administration officials were present but did not speak.

71.     The next morning, Friday, July 17, 2020, the teachers union issued a statement blasting the school reopening plan, saying that it "is wholly inadequate to protect the health and safety of students and staff."

72.     Two business days later, on Tuesday, July 21, 2020, Dr. Smith announced that the school system was abandoning the draft reopening plan it had announced just seven days earlier. Instead, the school system would remain in a "virtual-only instructional model" through the first semester – January 29, 2021.

73.     Dr. Smith said this change was based upon "additional guidance" received from the County Health Officer the day before, remarkably issued on the day after the teachers union opposition was announced. The reversal occurred even though the reopening plan released the previous week had been released upon guidance from "our County health partners."

74.     In response to the school system's reversal, many Montgomery County parents, such as Plaintiff Clara Obermeier, decided to remove their children from Montgomery County Public Schools and place them in private schools.  Ms. Obermeier will be withdrawing her rising sixth and eighth graders from Thomas W. Pyle Middle School, a public school in Bethesda, and has already enrolled them in St. Bartholomew School, a Roman Catholic K-8 school in Montgomery County.

75.     These withdrawals will obviously impact the Montgomery County public school system.  Montgomery County Public Schools had been anticipating 3,500 new students to enroll this August, but as of last week, only 300 new K-12 students had enrolled. Montgomery County's state funding is predicated upon its per-pupil enrollment numbers each fall.

76.     At no time did Montgomery County or its Health Officer issue its own reopening guidance or contradict the guidance set forth by the Maryland State Department of Education. Rather, the Health Officer adamantly declined to provide such guidance to the County's religious and private schools, despite their requests for guidance.

77.     Soon after the decision by Montgomery County Public Schools to be all-virtual in the fall, some Montgomery County parents and interest groups began to raise "equity" concerns about public school students having to learn remotely, while religious and private schools were conducting in-person classes.

78.     The Montgomery County Board of Education held on meeting on August 6 and reviewed the Montgomery County School System's plan for fully remote instruction. During that meeting, members of the Board of Education expressed concern about the time that students will spend in front of a computer and that these students have experienced significant loss in their

learning by being all-virtual.  The Board of Education did not officially vote on Thursday to ratify the plan.

79.     During the meeting Superintendent Smith stated that "if things change dramatically" in the early fall as to COVID-19 transmission rates and cases in the County, then the public school system "might be able to accelerate" physical reopening of the schools.

### The County Health Officer has no authority to issue a blanket order closing all nonpublic schools

80.     The Health Officer had no authority to issue a blanket order physically closing all religious and private schools in the County.

81.     County health officers are State employees. They are paid by the State, and are jointly appointed by the County and the Secretary of Health.

82.     County health officers are required to enforce throughout the county, "[u]nder the direction of the Secretary, the State health laws and the policies, rules and regulations that the Secretary adopts." Md. Code Ann., HG § 3-306(c)(4)(i). They are also required to perform "any investigation or other duty or function directed by the Secretary." *Id.* § 3-306(d).

83.     County health officers are subject to the administrative and financial control of the Secretary of Health to ensure "the effective and coordinated delivery of public health services statewide."

84.     Rules and regulations of the Secretary of Health are binding on the political subdivisions of the State. Local county health officers "are bound by State public health policy."

85.     The State has adopted extensive regulations as to communicable diseases and the role of health officers in controlling diseases. *See* COMAR10.06.01.01, *et seq.*  This includes the power to quarantine tuberculosis patients (COMAR 10.06.01.20.A.3.B) and impose restrictions

on food handlers exposed to salmonella (COMAR 10.06.01.06.E.5), and other similar matters. There is nothing in the State communicable disease regulations that authorizes a local health officer to issue a blanket order closing schools.

86.     While the Health Officer cites to § 18-208 of the Health General Article and COMAR 10.06.01.06 in his August 5 order as giving him authority to prohibit the reopening of schools, neither gives him such authority.

87.     Section 18-208 requires that "within 24 hours after receiving notice of the disease" that a local health officer give the Secretary "information obtained on the disease" and "shall cooperate with the Secretary to prevent the spread of disease."

88.     COMAR 10.06.01.06 gives the Secretary or health officer authority to take action to control the spread of contagious disease, including the authority of operation of a business or facility determined or suspected to be a threat to public health."

89.     These provisions do not allow for the blanket closure of all private and religious schools. Rather, under COMAR 10.06.01.06, the county health officers are to make individualized determinations concerning particular businesses or facilities after an appropriate inspection.

90.     Further, the distinction between "political subdivision" and "local health officer" is important, and Governor Hogan has carefully made that distinction in his executive orders. The governor has carefully defined what authority he is delegating expressly to local health officers.

91.     In Executive Order 20-04-05-02, "Delegating Authority to Local Officials to Control and Close Unsafe Facilities," Governor Hogan authorized local health officers to close an "Unsafe Facility," which is defined as one "unable or unwilling to operate in a manner that

does not pose an unreasonable risk of exacerbating the spread of COVID-19 (including, without limitation, as a result of non-compliance with Social Distancing Guidance)."

92.     For such an "Unsafe Facility," the local health officer is empowered to "require the Unsafe Facility to modify its operations to comply with Social Distancing Guidance"; or "designate all or part of the Unsafe Facility as a zone in which the occupancy and use of buildings may be controlled, and prohibit or limit the movement of individuals and/or vehicles into, in, or from the Unsafe Facility."

93.     Here, the County Health Officer has not, and cannot, declare all Montgomery County religious and private schools an "Unsafe Facility."  Executive Order 20-04-05-02 requires an individualized judgment about a particular facility, not a blanket determination about all religious and private schools.  Secondly, the County Health Officer cannot show that religious and private schools, any or all of them, are "unable or unwilling to operate in a manner that does not pose an unreasonable risk of exacerbating the spread of COVID-19."  To the contrary, they have made extraordinary effort and investment to operate in a manner which does not impose unreasonable risks.  Finally, the County Health Officer's remedy is to simply order compliance with social distancing, or designating "all or part of the Unsafe Facility" as an unsafe zone, limiting the movement of persons or vehicles, or "closing the Unsafe Facility."

94.     Here, the County Health Office seeks to ignore and circumvent the plain requirements in the Executive Order 20-04-05-02.  He seeks to close religious and private schools without making the predicate finding required to designate an "Unsafe Facility," *i.e.,* that they are "unwilling or unable" to operate safely.  Nor has he pursued the remedy of allowing the schools to impose social distancing (which the schools have already instituted).

95.     The County Health Officer seeks to hijack the governor's executive order process and completely disregard the State's health policy and the directive of the Secretary of Health. This has extraordinary implication for both public and nonpublic education and directly interferes with the State Superintendent of Education's careful governance of education in Maryland.

### Health Officer's statements in webinar

96.     On Wednesday, July 29, 2020, two days before the Health Officer's first order physically closing religious and private schools, the County convened a webinar with leaders of Montgomery County religious and private schools. The program began with Earl Stoddardt, Montgomery County's director of emergency management and homeland security, stating that they wanted to provide information about current trends and how they "could impact when and how you all choose to open."  Director Stoddardt said that "we know you are actively all are actively considering how this impacts your ability to reopen and we wanted to make routine updates."  Despite these statements, Montgomery County had no intention of respecting the schools' ability to choose "when and how to open."

97.     During the webinar, the County Health Officer said he could not offer guidance to the schools about reopening:  "We don't have as a local health department a 'here's how to do this safely which is why we are meeting with you all to have this discussion, taking your questions."  He referenced the CDC and State Department of Education reopening guidelines, and Plaintiff schools have complied with all applicable guidelines.

98.     The County Health Officer made it clear that he was not familiar with the extraordinary retrofitting, revamping and rescheduling that religious and private schools have undertaken to reopen safely. He said "we can't physically visit every school." Instead, he would

deal with the "respective schools as a unit," not understanding that the religious and private schools are not a "unit" but a very diverse group of independently operated institutions.

99.     It appears the County Health Department has not even visited a single religious or private school, while it has found the time and resources to visit numerous bars and restaurants, including the Vibes Hookah Lounge at 1 Dawson Avenue in Rockville, the Cabana Hookah Lounge at 8227 Georgia Avenue in Silver Spring, and the Palisades Lounge at 211 Georgia Avenue in Silver Spring.

100.     The County presumably believes under executive order 20-07-29-01 that it has the authority shut down bars and restaurants, which have been documented by the CDC as the leading source of COVID-19 transmission. But instead of restaurants and bars, the County has used its purported closure authority to target religious and private schools. Indeed, while the County Health Officer professes to have no resources to inspect or even learn about the expensive and impressive retrofitting of these schools, the County has found ample resources to inspect bars and restaurants.

101.     The County Health Officer's blithe attitude toward religious and private schools even extended to the extensive investment of many schools in installing plexiglass dividers in the classrooms, which the State and County have not required anywhere. When asked about the plexiglass dividers, the County Health Officer responded that it was a "niche" issue, and he'd like to "learn more about what respective schools are doing because not everyone will be able to afford plexiglass."

102.     The County Health Officer would not provide an answer to specific questions about which metrics would decide opening and close recommendations.  He stated that his guidance on closing is based on "where we stand as county, where we stand a state and certainly

where we stand as a nation." He mentioned a specific criteria of cases in the single digits or

teens. He later acknowledged that in Montgomery County, "we have plateaued to some degree.

Our test positivity has improved."  Montgomery County's positivity rate, a key measure, has

now declined for 14 straight days.  It now stands at 2.3 percent, half the state average of 4.6

percent, one of the lowest in the state. (The WHO recommends before reopening, that a

jurisdiction should have a positivity rate of below 5.0% for 14 consecutive days.)

103.    Without warning, the County Health Officer issued his order two days after the

webinar.

### *Religious and private schools are unlawfully being stopped from opening for in-person learning, despite Plaintiffs' desires to send their children to religious schools*

104.    It is discriminatory to not permit religious and other private schools in

Montgomery County the same opportunity to determine on a school-by-school basis how and

when to reopen for in-person instruction.

105.    There were a number of religious and other private schools in Montgomery

County that had intended to reopen at the start of the school year for in-person learning.

Religious and other private schools often have smaller class sizes that public schools, better

allowing for social distancing practices. Religious and other private schools in the County have

spent thousands of hours and millions of dollars making detailed plans for in-person reopening

and making alterations and additions to their schools to allow for social distancing and other

safety practices.

106.    Plaintiffs John and Kimberly Beahn are Roman Catholic. Their children attend

Our Lady of Mercy School, a private, Catholic school in Montgomery County offering

kindergarten through eighth grade. There were 220 students enrolled during the 2019-2020

school year.

107.   Plaintiffs have enrolled their three minor children—who are rising 4th, 6th, and 8th graders—in a Catholic school to further their religious education and character development. The family's commitment to Catholic education, and their enrollment in Our Lady of Mercy, is an important exercise of their religious beliefs.

108.   Plaintiffs James and Gem Lawson have a child who is a rising 4th grade student at Our Lady of Mercy and were planning to send their child back to school in the fall. The Lawsons chose to send their son to Our Lady of Mercy because of the Catholic education it provides. By not being able to send their son to any in-person instruction, he is isolated from his peers and other children and facing challenges to his ability to develop socially.

109.   Our Lady of Mercy's stated mission is to "provide[] each student the opportunity to reach full potential of mind, body and spirit" in a way that is "guided by the heritage of our Catholic faith."

110.   On July 17, 2020, Our Lady of Mercy School sent a letter to parents and guardians, explaining that the Catholic Schools Office had provided schools with reopening guidelines to assist schools in determining a plan to reopen their campus, provide distance learning, or a hybrid of both. The reopening guidelines allow for the possibility of reopening or partial reopening utilizing social-distancing requirements. Our Lady of Mercy was enacting measures to allow for in-person learning, including mandating that faculty and students wear masks, rearranging the desks and seats in classroom to ensure physical distancing, having students eat lunch at their desks rather than the cafeteria, having students use external entrances to classrooms, staggering pick-ups and drop-offs, and having class outside if possible, among other measures.

111.    Plaintiff Clara Obermeier's children previously attended Montgomery County Public Schools but she decided to enroll them at St. Bartholomew after learning that public schools would not be opening for in-person instruction in the fall. Ms. Obermeier and her husband, who is an active duty officer in the U.S. Coast Guard, have jobs that do not allow them to work from home.

112.    Ms. Obermeier and her family are Roman Catholic. They decided on St. Bartholomew because it is the school associated with their parish, St. Bartholomew Catholic Church, and will allow their children to further their religious education and character development. Her husband teaches CCD at St. Bartholomew and her son plays CYO basketball at the church.

113.    St. Bartholomew holds itself out as a private Catholic school that "instill[s] traditional faith-based values" and "fosters and celebrates Christian values." The school "instills in its students the importance of Christ in developing character and integrity" through "weekly Mass and community service initiatives, and daily religious instruction and prayer."

114.    Ms. Obermeier toured St. Bartholomew prior to enrolling her children there and was thoroughly impressed by the health and safety measures that the school said it would be taking. The students would be entering and exiting classrooms through exterior doors so there would be no congregating in hallways. St. Bartholomew's reduced class sizes to comply with social distancing requirements: her daughter's eighth grade class would have nine students and her son's sixth grade class would have 14 students. The school would be utilizing larger classroom spaces and would be staggering times for entering and exiting classrooms to allow for social distancing. St. Bartholomew would no longer be offering hot lunches, instead requiring

students to pack their own lunches, and there would be an outdoor classroom available for instruction.

115.    Plaintiff Miriam Roth has two sons that are going into second and fourth grade at the Torah School of Greater Washington, located in Silver Spring, Maryland. The school has approximately 385 students in kindergarten through sixth grade. It is essential to Ms. Roth, who is Jewish, that her children attend a Jewish School.

116.    The mission of the Torah School of Greater Washington is "to cultivate a love for Torah, Judaism, and Eretz Yisrael and foster excitement for learning in each school." The students all receive both secular and Judaic education on a daily basis.

117.    Ms. Roth was planning to send both of her school-aged to the Torah School of Greater Washington starting in early September for in-person instruction. She was required in March 2020 to put down a deposit for the 2020-2021 school year and to sign a document stating that she was going to pay the full tuition.

118.    The Torah School of Greater Washington has taken extensive precautions to protect the health and safety of their students, including implementing social distancing and mandatory mask procedures, requiring students to carry hand sanitizer with them at all times, installing plexiglass in classrooms, having teachers wear face shields, using more areas of the school as classrooms in order to reduce the size of classes to no more than approximately nine students, purchasing a tent to allow for an outdoor space for kids if needed, and shortening the day to get rid of any extraneous activities. The school was also planning to offer continued distance learning for any students that requested it.

119.    The Health Officer's order provided no exception for in-person special education instruction, which causes harm to Ms. Roth's fourth-grade son who has Dyslexia and ADD. Prior

to the closure of the Torah School of Grater Washington in March, her son received one-on-one or two-on-one special education about 30 to 40 percent of the day, with the rest of the day spent in with his entire class. When the school closed in the spring due to COVID-19, her son still received some one-on-one instruction via Zoom but he was not getting anything out of the lessons. Her son was unable to focus on the computer, which would lead him to get extremely frustrated. There was a special education teacher at the school that her son had developed a close and productive relationship with prior to the pandemic who gave him lessons but, due to the frustrations resulting from Zoom learning, her son no longer wants to work with that teacher.

120.    Prior to the pandemic, Ms. Roth's younger son was receiving individualized one-on-one enrichment instruction because he is at an advanced reading level. While he was still receiving some enrichment instruction via Zoom during the spring, the lessons were shorter and not nearly as effective as the in-person lessons.

121.    Ms. Roth and her husband had planned for their two older sons to go back to school for in-person instruction beginning in September. Both Ms. Roth and her husband have full time jobs and also have a one-year old and three-year old at home, making it extremely difficult to get their work done while watching four children under the age of nine.

122.    Plaintiffs Joshua and Penny Bortnick have a daughter who is a rising 8th grade student at Charles E. Smith Jewish Day School ("CESJDS") in Montgomery County. They were planning to send their daughter back to CESJDS for in-person education if the school opened for it.

123.    CESJDS's mission is to "engage students in an exemplary and inspiring general and Jewish education, to ensure a vibrant Jewish future in order to foster the growth of confident and compassionate thinkers to engage the world through Jewish values."

34

124.   CESJDS announced on July 8 that it was preparing for several scenarios—full return to campus, a hybrid approach, and distance learning—and was focusing on the hybrid approach. Two days later, the school announced health and safety measures for students, faculty, and staff for a safe return to school, including installing plexiglass shields to certain areas, separating desks, adding touch-free faucets to bathrooms, reducing class size, requiring that face coverings be worn, suspending all group gatherings, and requiring all students and employees submit self-screening data each day, among other measures. CESJDS emailed families on July 17, 2020 with an update on its plans for the reopening of schools in August and announced that the school would make a decision by August 6 as to its learning plans for lower school, middle school, and high school.

125.   The Bortnicks' daughter has struggled to adjust to virtual learning. She had transferred to CESJDS the prior year and was still in the process of making and developing friendships, which is nearly impossible when the only option is virtual learning.

126.   The Bortnicks are on a 10-month payment plan for CESJDS and have already made the first two payments for the upcoming school year.

127.   Plaintiffs Christopher and Meagan Rizzo have a son who is a rising fourth grade student at The Heights School ("The Heights") in Potomac Maryland. The Heights is an all-boys private school for grades 3-12 with a student body population of 540 students and 65 faculty members. The Rizzos were planning to send their son to the Heights this fall for in-person instruction, recognizing the importance to growth and development of their young child that only face-to-face learning can provide.

128.   The Rizzos had heard from The Heights that it had been taking steps to allow for face-to-face instruction to happen in the fall, including plans to expand the use of outdoor space

and possibly having the upper school engage in virtual learning but allowing the middle and lower schools to come to school. Given the smaller enrollment of The Heights and its larger indoor and outdoor space compared to many public schools, The Heights is in a unique position—along with many other religious and private schools in the County—to be able to safely open.

129.     The Rizzos had been counting on their son returning to in-person education in the fall. Meagan Rizzo is a physician who runs a clinic in an area hospital and has been treating COVID-19 patients since the pandemic began. Due to her job and her husband's job—which may require out-of-state travel beginning next month—the Rizzos will need to hire a childcare provider to be with their son during the day if The Heights is not permitted to open. The Rizzos will have to pay for a childcare provider on top of paying the full Heights tuition.

130.     The Rizzos chose to send their son to The Heights because of the character and spiritual development he would receive there. The Rizzos' son receives religious education three days a week and all students in the lower school are assigned a mentor. The spiritual development and education that her son receives through the school does not translate in virtual learning, particularly to young students. A particular draw of the school is the mentorship that it provides to its young students, who is available to help the boys develop intellectually, morally, and spiritually. This mentorship is nowhere near as effective, frequent, or accessible to young students when not in person.

### *Religious and Private Schools are unlawfully prohibited from reopening for in-person learning despite extensive action taken to safely reopen*

131.     Plaintiff The Avalon School is an independent, all-boys Catholic school offering grades K-12 in Silver Spring, Maryland. The school has approximately 180 students enrolled for

the 2020-2021 school year. The school is well-recognized for its diverse student population, including a large population of Hispanic and African American students.

132.     The Avalon School is recognized by the Archdiocese of Washington and offers daily mass, with a requirement that its students attend mass on the holy days of obligation. There is a priest on staff, and Catholic education is taught to all students five days a week.

133.     Plaintiff The Brookewood School, which is affiliated with the Avalon School, is an independent, all-girls Catholic school offering grades 1-12 in Kensington, Maryland. There are approximately 142 students enrolled for the 2020-2021 school year.

134.     The Brookewood School similarly offers mass every day and requires its students to attend mass on the holy days of obligation. There is a priest on staff, and students take religious classes each day.

135.     Prior to the Health Officer's order, both the Avalon School and the Brookewood School were planning to reopen for in-person learning on September 3. Since the spring, the schools have been setting forth a plan for reopening, which has included setting up a taskforce to oversee reopening, purchasing digital scanning thermometers, marking sidewalks based on social distancing requirements, purchasing smaller desks for the Brookewood School to better allow for social distancing, reducing class sizes, cancelling sports, and cancelling the schools' transportation program, which previously had allowed staff to transport students to and from school in 13-person passenger vans.

136.     The Avalon School has been operating an academic summer camp for boys and girls since June 22, 2020 and the summer camp is still currently operating. The summer camp is operating in compliance with CDC guides and State orders. The camp has been a success this summer, and there have been no incidents of COVID-19.

137.    In addition to the Torah School of Greater Washington, CESJDS, the Avalon School, the Brookewood School, Our Lady of Mercy, and St. Bartholomew, most other religious and private schools in Montgomery County have made an extraordinary investment of resources and efforts in the last three or more months to plan for a safe reopening. This extraordinary effort has been based on guidance from the Center for Disease Control, the Maryland Health Department, the State Department of Education, and recognized public health experts.

138.    These efforts vary from school to school, depending on size and layout, and include, but are not limited to:

a.  retrofitting schools to reduce classroom size and protect social distancing;

b.  installing plexiglass between desks in classrooms and other facilities to protect teachers, students and staff;

c.  investing in tenting to expand space and utilize outdoor spacing;

d.  introducing mandatory temperature readings each morning from faculty, students and staff;

e.  expanding the number of school entrances to encourage social distancing;

f.  institution of cleaning and handwashing throughout the day, and evening power washing;

g.  mandatory masks for all teachers, students and staff;

h.  revamped class schedules to limit hallway movements throughout the day. Some schools have banned hallway usage altogether where each classroom has an exit directly to the outdoors; and

i.  limited lunch in small cohorts.

139.    These efforts have been taken at considerable expense, with many schools operating on a shoestring budget, despite the popular stereotype of "wealthy private schools."

These efforts include fundraisers, volunteer efforts, and donations of expertise and effort from skilled members of the school community.

140.    Though many public facilities have introduced safeguards, there is no indication that effort to this extraordinary degree have occurred in comparable facilities in Montgomery County, such as restaurants, bars, or daycares, which are not subject to the Health Officer's closure order.

141.    The Beahns, Ms. Obermeier, and other parents have acted in reliance on these extraordinary efforts to insure a safe reopening.

142.    The Beahns and Lawsons had a reasonable expectation that Our Lady of Mercy would provide religious and academic education for their children beginning this month. They have paid nonrefundable tuition for their children to attend school this fall.

143.    The Beahns and other Plaintiffs organized their work and personal lives based upon the reasonable expectation that their children would be spending school days in the school classroom. They have foregone opportunities to place their children in the hundreds of private schools throughout the Washington region outside of Montgomery County that remain open.

144.    The Health Officer's order does not encompass postsecondary schools that are reopening in Montgomery County, including the University of Maryland at Shady Grove, Montgomery College, and Washington Adventist University. Washington Adventist University is reopening this month with in-person classes.  Montgomery College is utilizing a hybrid program of mostly remote learning, with some in-person classes and laboratories. UMSG is offering remote classes from its nine partner University of Maryland schools, all of which are themselves offering in-person classes and remote experience.

145.    The Health Officer's order, directed only at religious and other private schools, appears to be the only one of its kind in the country.  Meanwhile, religious and other private schools throughout the rest of Maryland, the District of Columbia, and Virginia are preparing for safe reopenings in the coming weeks, after months of careful planning and significant expenditures.

146.    While Montgomery County Public Schools system can choose to reopen at any time, the Health Officer has usurped the authority of leaders of the County's religious and other private school leaders to make their own similar decisions about when to reopen or close.

147.    The Health Officer has not alleged that any religious or private schools fail to comply with CDC guidelines or state health protocols in their planed reopening. The order was not in response to any COVID-19 outbreak. There has not been a single, reported COVID-19 case in Montgomery County religious or private schools during the pandemic.

148.    The County Health Officer has no understanding of the extraordinary efforts private schools have made to reopen safely, including retrofitting schools, revising procedures, and creating safe learning environments, and no apparent interest in learning about these. On Wednesday's conference call related to the reopening of private schools, the Health Officer refused requests from private schools to review the efficacy of their reopening plans or visit their schools, and he failed to make any inquiry whatsoever into the extraordinary efforts the schools have made to reopen safely.

149.    Religious and other private schools had made requests to the Health Officer for guidelines or criteria to reopen safety but the Health Officer stated that "we don't have as a local health department a 'here's how to do that safely.'" Even though he was refusing to issue his own guidelines, he belittled guidelines from the CDC, the Maryland State Health Department,

and other recognized health authorities that private schools had been following. He dismissively stated that "a lot of guidelines are just that."

150.    The Montgomery County public school system is one of the largest in the country with 126,680 students and 23,347 staff, most of whom are covered by extensive collective bargaining agreements. There are slightly more teacher sin Montgomery County Public Schools than there are students enrolled in all religious and other private schools in the County combined. For a school system the size of MCPS, with buildings containing large enrollments, there are more complex and challenging political and logistical considerations than those faced with smaller private schools with more organizational and physical flexibility. For instance, Plaintiff Avalon School has a student population that is 6% the size of nearby Montgomery Blair High School.

151.    The County Health Officer's abrupt decision to shut down in-person learning in religious and private schools was not based upon public health concerns, but in response to "equity" issues about public school students having to learn remotely while religious and private schools students have in-person classes. The County Health Officer's concerns about "public health" were pretextual. There have been no COVID-19 outbreaks in public schools. There has not been a single reported case of an infection a Montgomery County religious or private school.

152.    The County Health Officer did not and was unwilling to consider the significant investment extraordinary precautions under taken by plaintiff schools and private and religious schools in Montgomery County to safely reopen. He was unwilling to articulate any reasonable metrics for opening and closing. While Montgomery County's COVID-19 positivity rate is among lowest in the State, it is the now only jurisdiction in the State – and the country -- which seeks specifically to shut down in-person classes at religious and private schools.

153.    The County Health Officer's last minute order was a surprise both to the schools, as well as the parents and the students. Throughout the summer, the County government had been advising religious and private schools to "follow CDC guidelines."  Now, the County Health Officer states they are "just that, guidelines."

154.    The CDC guidelines provide extensive strongly encourage safe reopening, stating what is obvious to most parents:

> Reopening schools will provide in-person instruction for students, facilitate increased communication between teachers and students, and provide students with critical academic services, including school-based tutoring, special education, and other specialized learning supports.

> Studies show that students have experienced learning loss during the period of school closure and summer months. In-person instruction for students has advantages over virtual learning, particularly when virtual learning was not the planned format for instruction, and schools may not have the resources or capability to transition fully to virtual learning. In-person classroom instruction has the added benefit for many students of interpersonal interaction between the student and the teacher and the student and peers. Teachers are able to more actively participate in student learning, provide feedback as students encounter challenges, and promote active learning among students.

> In-person instruction may be particularly beneficial for students with additional learning needs. Children with disabilities may not have access through virtual means  to the specialized instruction, related services or additional supports required by their Individualized Education Programs (IEPs) or 504 Plans. Students may also not have access through virtual means to quality English Language Learning (ELL).[1]

155.    The Health Official's order came as a surprise to thousands of Montgomery County families, who had students enrolled to attend religious and private schools this fall. Many parents have paid nonrefundable tuitions, many working major financial and lifestyle sacrifices to give this opportunity to their children. Working parents have relied upon the school buildings

---

[1] CDC Reopening Guidelines, updated August 1, 2020: https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/prepare-safe-return.html#important

reopening for their childcare and the Health Officer's order imposes an extraordinary financial burden upon them to find alternative child care, ironically at day care centers that remain wide open. Parents who would have sent their children to religious, private, or other schools in other counties missed that opportunity, even though private schools have a right to open in every other Maryland jurisdiction, Virginia, and the District of Columbia.

156.   Moreover, there is no rational basis for the political subdivision or County Health Officer to make a determination that here that closing religious and non-private classroom instruction is both "necessary" and "reasonable" to "save lives" or "prevent exposure to Covid-19" as required by Executive Order 20-04-05-02.  First of all, the County Health Officer has no basis to make a judgment that it is "necessary" or "reasonable' to close down classrooms in religious and private schools to "save lives" or prevent COVID-19 exposure.

157.   "Necessary" means there is no reasonable alternative.  The County Health Officer has refused to even understand that reasonable alternatives religious and private schools have put in place. The County Health Officer made it quite clear during the County's webinar last Wednesday that he and the County health staff has no willingness or ability to visit any or all of the religious and private schools. Instead, he said he would deal with the "respective [private] schools as unit," a phrase he repeated.

158.   It appears the County has not visited or inspected even a single religious or private school, or taken steps to understand the extensive precautions nearly all have taken. Indeed, he admitted that before the abrupt public school reversal, that they had visited only a single public school.

159.   "Reasonable" means after understanding all of the underlying facts and examining reasonableness must be seen in the context of how the County is exercising its discretionary

judgment toward other places where the public assembled.  All of the bars and restaurants in the County have been permitted to reopen, subject to the limitations in the Governor's executive order.  The daycare centers are open.  The gymnasiums are open.  The community colleges are open.  The four year colleges are open.

160.    The County has made no efforts to interfere with the operations of the religious and private schools since the COVID-19 crisis erupted in late February and early March.  Indeed, some of these schools offered summer programs safely, without interference from the County, and without any outbreak of COVID-19.  In contrast to other facilities, there has not been a single reported case of an outbreak of COVID-19 at any religious or private school in the County since the pandemic began.

161.    Prohibiting the in-person reopening of religious and private schools to prevent some new COVID-19 threat does not justify this last-minute, surprise order on the eve of school reopening. The only thing that has changed is that public school system, at the behest of the teachers' union, has itself abruptly changed course and closed their classrooms, despite the wishes of many parents who wanted schools to reopen for their children.  This has created a political dilemma, not a public health problem: How to explain to these same parents why the religious and private schools are still operating? The answer is not an unlawful shutdown of their classrooms.

## CLASS ACTION ALLEGATIONS

162.    Plaintiffs brings this lawsuit on behalf of themselves, their minor children, and all other persons similarly situated, defined as follows:

> All nonpublic schools in Montgomery County, Maryland and all students enrolled in or accepted at nonpublic schools in Montgomery County, Maryland for the 2020-2021 school year.

163.    This action is brought and may properly be maintained as a class action.  This action satisfies the numerosity, typicality, adequacy, predominance and/or superiority requirements under applicable law.

*Numerosity*

164.    On information and belief, the members of the Class number around 23,312 students and 180 nonpublic schools.  As a result, the Class is so numerous that joinder of all members in a single action is impracticable.  The members of the Class should be readily identifiable from information and records in Defendants' possession, custody or control.  The disposition of these claims will provide substantial benefits to the Class.

*Commonality/Predominance*

165.    There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from members of the Class, and which may be determined without reference to the individual circumstances of members of the Class, include, but are not limited to the following:

a.    Whether the Montgomery County Health Officer had authority to issue the July 31, 2020 directive and order prohibiting nonpublic schools in the County from conducting in-person instruction;

b.    Whether the July 31, 2020 directive and order violates the state and federal constitutional rights of students that attend nonpublic schools in Montgomery County; and

c.    Whether the July 31, 2020 directive and order violates the state and federal constitutional rights of nonpublic schools in Montgomery County as to reopening; and

45

d.      Whether, as a result of the Defendants' issuance of the July 31 directive and

order, the Plaintiffs and the Class are entitled to injunctive relief and/or other damages and relief

and, if so, the nature of such relief.

*Typicality.*

166.    The representative Plaintiffs' claims are typical of the claims of the Class because

Plaintiffs and all members of the Class were injured by the Defendants' directive and are based

on the same legal theories.

*Adequacy of Representation*

167.    Plaintiffs will fairly and adequately protect and pursue the interests of the

members of the Class.  Plaintiffs will vigorously represent the interests of the Class.  Plaintiffs

have retained counsel who are experienced and qualified in prosecuting complex litigation cases

and who have class action experience as well.  Neither Plaintiffs nor their attorneys have

interests which are contrary to or in conflict with those of the Class.

*Superiority/Manageability*

168.    A class action is superior to all other available methods for the fair and efficient

adjudication of this lawsuit. Individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments and would magnify the delay and expense to all parties

and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know

of no difficulty to be encountered in the management of this action that would preclude its

maintenance as a class action.  Relief concerning Plaintiffs' rights under the laws herein alleged

and with respect to the Class would be proper.

**COUNT I**
**Declaratory Judgment – Legal Authority of Health Officer**
**(Plaintiffs v. Defendants)**

169.     Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

170.     This is an action for declaratory judgment in accordance with C.J.P. §§ 3-401, *et seq.*, for the purpose of determining a question of actual controversy between the parties.

171.     On July 31, 2020, Montgomery County Health Officer Travis Gayles issued a directive and order that all private and religious schools in Montgomery County are "prohibited from physically re-opening for in-person instruction through October 1, 2020."

172.     The Health Officer purported to be acting on the authority of the Maryland Department of Health. The Health Officer does not assert in his order that he is exercising any home rule powers of the Montgomery County government or any particular statutory authority.

173.     Under the State's emergency law, the governor is vested with the exclusive authority to take executive action in the pandemic.

174.     Governor Hogan issued a statement the following day, August 1, stating that he "strongly disagree[s] with Montgomery County's decision to mandate the closure of private and parochial schools."

175.     The Governor's Executive Order 20-07-29-01 does not delegate to the Health Officer any authority to close in-person learning in religious or public schools. While the executive order provides that political subdivisions are authorized to take more restrictive steps to require businesses, organizations, establishments, or facilities to close and/or modify their operations if determined that doing so is necessary and reasonable, the County Health Officer is not a "political subdivision" and the religious and private schools are not considered an "unsafe facility."

176.     On August 3, 2020, Governor Hogan issued an emergency executive order making it clear that the County Health Officer cannot act upon gubernatorial emergency authority in his closure order. The order specifically stated that a "political subdivision" may issue a more restrictive closing order than what is in the Governor's closure order, but may not do so as to schools.

177.     The Governor acknowledged in a statement that "[t]he blanket closure mandate imposed by Montgomery County was overly broad and inconsistent with the powers intended to be delegated to the county health officer."

178.     On August 5, the County rescinded the Health Officer's July 31 order and replaced it with the Health Officer's August 5 order, which still prohibited religious and private schools from physically reopening through October 1. The Health Officer relied on COMAR 10.06.01.06 and § 18-208 of the Health General Article of the Maryland Annotated Code as purportedly giving him the authority for such a blanket closure.

179.     The Health General Article requires local health officers to "cooperate with the Secretary [of Health] to prevent the spread of disease." Md. Code Ann., HG § 18-208. The Secretary of Health—along with the Governor—have made clear that the State's health policy is to allow nonpublic schools to make their own determinations about reopening.

180.     The COMAR provision relied on by the Health Officer allows the Secretary of Health or health officer to order a business or facility to close if it is suspected to be a threat to public health after making an individualized determination about the business or facility, but does not give the Health Officer authority to issue a blanket order closing all schools.

181.    Further, Montgomery County is a home rule county and its government has no authority to regulate public or private schools.

182.    The General Assembly has the exclusive authority to regulate public or private schools and has delegated regulation of public and private schools to the State Board of Education.

183.    The Montgomery County public school system is considered an instrumentality of the State. It is governed by a superintendent and an elected board of education but it is a creature of the General Assembly and ultimately subject to the visitorial power of the State Board of Education, which acts through the State Superintendent of Schools.

184.    County health officers act as the discretion of the Maryland Secretary of Health to enforce health laws and policies, rules, and regulations adopted by the Secretary of Health. County health officers also have authority to enforce "rules and regulations" of the County health boards. Montgomery County's County Council sits as the Board of Health. *See* Montgomery County Code, § 24-1. The Board of Health is authorized "to adopt and enforce all needful rules and regulations concerning sanitation for eating and drinking establishments, habitable buildings and private water supplies, within their jurisdiction." *Id.*

185.    The Health Officer had no authority to issue an order prohibiting religious or other private schools from reopening for in-person instruction.

186.    The County's health department acknowledged as such in an email sent from Kenny Welch to the Executive Director of the Avalon School and the Brookewood School, which stated that whether Montgomery County will play a role if schools will be able to open will depend on whether the Governor and Maryland Department of Education give power to the local authorities. Neither the Governor nor the Maryland Department of Education have given

the Health Officer any authority to regulate religious or private schools nor is there any statutory or regulatory authority allowing the Health Officer to do so.

187.    Thus, an actual, justiciable controversy of a practicable issue between Plaintiffs and Defendant exists within the jurisdiction of the Court involving the rights and liabilities of the parties and the parties' rights, status, or legal relations are affected by the Charter and relevant statutes, and the controversy will likely only be resolved and determined by a judgment of this Court.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

## COUNT II
### Violation of the First Amendment – Free Exercise of Religion
### (Plaintiffs v. Defendants)

188.    Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

189.     The First Amendment to the United States Constitution prohibits the government from legislating an establishment of religion or prohibiting the free exercise of religion.

190.     The Health Officer's order is solely directed at religious and private schools and the students who attend those schools.

191.     The Montgomery County Public Schools system has been given complete autonomy discretion to decide when and how to reopen. While the County's public school system has chosen remote learning for now, it may reopen anytime it chooses. There has been no similar order requiring public schools in Montgomery County to be closed.

192.     The County Health Officer has usurped the authority from religious and private school leaders to make their own decisions about when and how to reopen.

193.     The order on its face and as applied targets religious and private schools with religious beliefs, and the students who attend those schools, but allows for public schools to remain open.

194.     Religious and other private schools are not being allowed the same freedom to decide when and how to reopen, a freedom that it given to non-religious public schools. The Health Officer's order takes away the religious schools' choice to reopen, the choice of parents to send their children to receive in-person religious education, and the rights of students to receive in-person religious education.

195.     Plaintiffs the Avalon School and the Brookewood School are religious schools offering religious education to their students on a daily basis. These schools—and other similarly situated schools in the County—are being treated differently based on the fact that they are religious schools.

196.    The adult Plaintiffs have all chosen to send their children to religious schools for in-person religious education but that right has been violated by the Health Officer's order.

197.    The minor Plaintiffs all attend religious schools where they receive both secular and religious education but are no longer able to fully receive that religious education if they are not able to physically attend their schools.

198.    The order is not narrowly tailored to serve any interest of Defendants and is not the least restrictive means to accomplish any permissible government purpose that Defendants seek through its directive.

199.    The Health Officer's directive and order are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on the constitutional right of Plaintiffs to the free exercise of religion.

200.    The decision to close all religious and private schools to in-person education is broader than necessary to achieve any interest of the County.

201.    As a direct and proximate result of Gayle's action, Plaintiffs will suffer damage including, but not limited to, deprivation of their educational and civil rights.

202.    Plaintiffs will be irreparably harmed in the absence of injunctive relief. The deprivation of their constitutional rights constitutes irreparable harm, including harm to educational advancement and their civil rights.

203.    Plaintiffs have suffered economic damages for the period of time in which the Health Officer's unlawful orders were in effect.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County

Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

## COUNT III
### Violation of the First Amendment - Freedom of Association
### (Plaintiffs v. All Defendants)

204.    Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

205.    There is an implicit right in the First Amendment to the U.S. Constitution to association in order to engage in those activities protected by the First Amendment, including the right to assemble and the free exercise of religion.

206.    The individual Plaintiffs have a right to associate at religious schools for the purpose of sending their children to receive in-person religious education and for the minor Plaintiffs to receive in-person religious education.

207.    The school Plaintiffs have a right to associate for the purpose of having faculty, staff, and students take part in in-person religious education at their schools.

208.    The Health Officer's July 31 order prohibiting the Plaintiffs from reopening for in-person instruction or attending school in-person violates Plaintiffs' implicit right to associate in order to freely exercise their religion.

209.    The directive and order unconstitutionally discriminates against Plaintiffs' on the basis of their religious affiliation.

210.    The order is not narrowly tailored to serve any interest of Defendants and is not the least restrictive means to accomplish any permissible government purpose that Defendants seek through its directive.

211.    The Health Officer's directive and order are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on the constitutional right of Plaintiffs to associate.

212.    The decision to close all religious and private schools to in-person education is broader than necessary to achieve any interest of the County.

213.    As a direct and proximate result of Gayle's action, Plaintiffs will suffer damage including, but not limited to, deprivation of their educational and civil rights.

214.    Plaintiffs will be irreparably harmed in the absence of injunctive relief. The deprivation of their constitutional rights constitutes irreparable harm, including harm to educational advancement and their civil rights.

215.    Plaintiffs have suffered economic damages for the period of time in which the Health Officer's unlawful orders were in effect.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by

enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

**COUNT IV**
**Violation of the First Amendment - Right of Assembly**
**(Plaintiffs v. Defendants)**

216.    Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

217.    The First Amendment to the United States Constitution prohibits the violation of one's right to assemble.

218.    The individual Plaintiffs' have a fundamental right to assemble as students at religious schools for in-person instruction, and the school Plaintiffs' have a right to open their doors for students to attend for in-person instruction.

219.    The Health Officer's directive and order violates Plaintiff's First Amendment right to assembly by prohibiting religious and private schools from reopening for in-person education and prohibiting students from receiving an in-person religious education.

220.    The directive and order unconstitutionally discriminates against Plaintiffs' on the basis of their religious affiliation.

221.    The order is not narrowly tailored to serve any interest of Defendants and is not the least restrictive means to accomplish any permissible government purpose that Defendants seek through its directive.

222.     The Health Officer's directive and order are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on the constitutional right of Plaintiffs to assemble.

223.     The decision to close all religious and private schools to in-person education is broader than necessary to achieve any interest of the County.

224.     As a direct and proximate result of Gayle's action, Plaintiffs will suffer damage including, but not limited to, deprivation of their educational and civil rights.

225.     Plaintiffs will be irreparably harmed in the absence of injunctive relief. The deprivation of their constitutional rights constitutes irreparable harm, including harm to educational advancement and civil rights.

226.     Plaintiffs have suffered economic damages for the period of time in which the Health Officer's unlawful orders were in effect.


WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and

other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

**<u>COUNT V</u>**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
**(Plaintiffs v. Defendants)**

227.    Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

228.    Plaintiffs' right to equal protection under the laws is protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

229.    The Health Officer's directive and order violates the Fourteenth Amendment right to equal protection by requiring religious and other private schools to remain closed to in-person learning while not requiring that public schools or postsecondary schools in the County to similarly be required to remain closed to in-person instruction.

230.    Religious and private schools in the County, and the students who attend those schools, are treated differently than public schools in the County and the students who attend those schools.

231.    Defendants' actions treat Plaintiffs and those students and schools that are religious different from other similarly situated students and schools based on their religious beliefs and affiliations.

232.    Defendants are purposefully discriminating against Plaintiffs and other students and schools by requiring that those schools be closed to in-person education.

233.    Defendants do not have a rational basis for such disparate treatment.

234.    As a direct and proximate result of Gayle's action, Plaintiffs will suffer damage including, but not limited to, deprivation of their educational and civil rights.

57

235.    Plaintiffs will be irreparably harmed in the absence of injunctive relief. The deprivation of their constitutional rights constitutes irreparable harm, including harm to educational advancement and civil rights.

236.    Plaintiffs have suffered economic damages for the period of time in which the Health Officer's unlawful orders were in effect.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

### COUNT VI
### Violation of 42 U.S.C. § 1983
### (Plaintiffs v. Defendant Gayles)

237.    Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

238.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution.

239.    Defendant Gayles, at all relevant times to this complaint, worked as the Health Officer for the Montgomery County Department of Health and Human Services.

240.    Based on the allegations above, Gayles, acting in his individual and official capacities, acted under color of State law and deprived Plaintiffs of their clearly established rights protected by the First and Fourteenth Amendments to the United States Constitution, said rights including but not limited to, equal protection, the right to free exercise of religion, the freedom of assembly, and the freedom of association.

241.    Gayles deprived Plaintiffs of these liberties and rights when he issued a directive and order mandating that religious and other private schools in Montgomery County be prohibited from reopening for in-person instruction through October 1, 2020.

242.    As a direct and proximate result of Gayle's action, Plaintiffs will suffer damage including, but not limited to, deprivation of their educational and civil rights.

243.    Plaintiffs will be irreparably harmed in the absence of injunctive relief. The deprivation of their constitutional rights constitutes irreparable harm, including harm to educational advancement and civil rights.

244.    Plaintiffs have suffered economic damages for the period of time in which the Health Officer's unlawful orders were in effect.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County

Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

**<u>COUNT VII</u>**
**Violation of 42 U.S.C. § 1983 – During period Health Officer's Orders in Effect**
**(Plaintiffs v. Defendants)**

245.     Plaintiffs hereby adopt and incorporate by reference all the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

246.     This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to the Plaintiffs by the First and Fourteenth Amendments to the United States Constitution.

247.     Based on the allegations above, Gayles, acting in his individual and official capacities, acted under color of State law and deprived Plaintiffs of their clearly established rights protected by the First and Fourteenth Amendments to the United States Constitution said rights including but not limited to, equal protection, the right to free exercise of religion, the freedom of assembly, and the freedom of association, and rights under the Maryland Declaration of Rights, during the period of time after Gayles issued his July 31 order.

248.    After Gayles issued his July 31 order, Plaintiffs and others in the class were left with extensive uncertainty, chaos, and confusion as to whether religious schools were able to or could reopen.

249.    This uncertainty and confusion continued after the Health Officer issued his August 5 order, continuing to prohibit the physical reopening of religious and private schools, despite the Governor's executive order two days prior.

250.    This uncertainty and confusion continued on August 6 and after, as the Secretary of Health issued a memorandum to all health officers in the state that it was the State's policy that nonpublic schools could determine their own reopening plans.

251.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered non-economic and economic damages for the period of time in which the Health Officer's unlawful orders were in effect. Such damages include, but are not limited to, uncertainty and confusion as to where the minor plaintiffs can attend school, inability to plan for school, inability to determine how and when the schools should reopen, and necessity to find childcare.

WHEREFORE, Plaintiffs and members of the Class request that the Court enter a judgment against Defendants as follows: (i) Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class; (ii) Declaring that the Montgomery County Health Officer does not have the authority to issue a directive and order prohibiting private and religious schools from physically reopening for in-person instruction; (iii) Awarding Plaintiffs and other members of the Class temporary, preliminary, and permanent injunctive relief by enjoining Defendants from enforcing the Health Officer's July 31 or August 5 directive and order; (iv) Awarding judgment against Defendants in an amount exceeding seventy-five thousand dollars ($75,000.00), plus interest; (v) Awarding reasonable attorneys' fees, costs, and

other recoverable expenses of litigation; and (vi) Awarding Plaintiffs and other members of the Class such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully submitted,

JOSEPH, GREENWALD, AND LAAKE, P.A.

 */s/ Timothy F. Maloney*
Timothy F. Maloney
Alyse L. Prawde
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Phone: (301) 220-2200
Fax: (240) 553-1761
tmaloney@jgllaw.com
aprawde@jgllaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2020, a copy of the foregoing was served on all counsel of record via the CM/ECF system.

/s/_____
Alyse L. Prawde